TATE, Judge.
Plaintiff-appellee Bankston ■ initially sued Calvert Fire Insurance Company, his collision insurer, to recover the cost of satisfactory repair of the insured car. (The initial repair job following a collision was unsuccessful.)
After Calvert filed answer, the Commercial Credit Corporation intervened requesting payment of any proceeds of the claim upon the insurance policy to itself, as mortgagee holding chattel mortgage on the damaged car. Simultaneously, the defendant insurer deposited in the, register of the court the sum of $1,200, which was accepted by Bankston and Commercial Credit as compromise settlement of their claims against Calvert. The conflicting claims of these latter parties to this sum are the sole matter now before us.
Intervenor, Commercial Credit, appeals from lower court judgment awarding this deposited amount to the ‘car, owner, Bankston. ■
Bankston deniéd that Commercial Credit, mortgagee, has any right to the amount payable for collision - loss because, soon after this present suit was initially filed, said mortgagee foreclosed upon the automobile owned by Bankston and insured by Calvert and purchased same -at sheriff’s sale without appraisement, but for the full amount of the indebtedness.
At this point, we should state that the appellate record is not in too satisfactory condition, since the foreclosure suit intro *246 duced in evidence and relied upon by plaintiff is not contained therein, nor is the insurance policy relied upon by intervenor therein, which apparently was not ever introduced. However, we will accept as correct certain factual findings and factual assumptions of the District Court pertaining thereto, since they are not challenged by either party.
According to the record, Bankston purchased the 1951 Ford car in question on September 18, 1952 for $635 down-payment plus a note in the sum of $1,802.40 secured by chattel mortgage of the Ford. Bankston paid $525.70 upon said note, both before and after the accident wrecking the Ford, which occurred about two months after its purchase. . Commercial Credit’s foreclosure suit against Bankston was for the balance due upon the note of $1,276.70, plus' interest and attorneys fees, or a total indebtedness of $1,659.09; Commercial Credit had itself purchased the Ford at sheriff’s sale without benefit of appraisement and for the sum of $1,659.09, or the total amount of indebtedness due it under the notes.
Under such circumstances, the District Court, correctly held that any claim of Commercial Credit' Corporation to the insurance proceeds of the collision policy under the clause making losses payable to the mortgage creditor “as its interest may appear” (standard clause, see cases cited below) was.totally satisfied, and said mortgagee was without further interest in such proceeds, which, were properly payable in full to Bankston, owner of the car insured.
Apparently Commercial Credit, inter-venor-app'ellant, claims the insurance pro-, ceeds on the theory that its right- as mortgage creditor and payee of the loss insured by the insurance policy (under the “loss payable” clause) became fixed at the date of the loss; Pearson v. Rapstine, 5 Cir., 203 F.2d 313 and other cases cited below; and that even though the mortgage creditor purchased the mortgaged property without benefit of appraisement and therefore lost its right to a deficiency judgment against the mortgage debtor, LSA-R.S. 13:4106, nevertheless this defense is personal to the mortgage-debtor and does not prevent the mortgagee from collecting the proceeds of the insurance policy from the insurer, a third party, under Guinn v. Houston Fire & Casualty Ins. Co., La.App. 1 Cir., 32 So.2d 613.
Appellant overlooks, however, that the present case is distinguished from the Guinn case (where the property was purchased at sheriff’s sale for substantially below the mortgage debt) in that the mortgaged property herein was purchased at the sheriff’s sale for the full remaining balance due of the indebtedness and all court costs. Further, of course, the interest of a mortgagee under a “loss payable” clause of an insurance policy extends only to the amount of the mortgage debt due at the time of the loss, the surplus being for the mortgagor, In re Clover Ridge Planting & Mfg. Co., Inc., 178 La. 302, 151 So. 212 and Adams v. Allen, La.App. 1 Cir., 19 So.2d 578. To argue that despite the payment in full of the balance of the debt after the accident, nevertheless the mortgage creditor is entitled to collect the proceeds of the insurance policy, over and above the total of the mortgage debt, overlooks that the primary purpose of the insurance policy, the premiums for which were paid by the named insured, is to pay the collision losses sustained by him, and the purpose or cause, Article 1896, LSA-Civil Code, of the “loss payable” clause is only to protect the mortgage creditor from loss of its security up to the amount of the debt through collision accident and dispersion of the proceeds by the insured, its mortgage debtor.
For the above and foregoing reasons, the District Court’s judgment herein will be affirmed; costs of this appeal and of the proceedings below be paid by intervenor and appellant, Commercial Credit Corporation.
Affirmed.